UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICKY EVANS,<br><br>Defendant | Case No. JKB-17-0163 |

**GOVERNMENT'S RESPONSE IN OPPOSITON TO DEFENDANT'S MOTION TO
SUPPRESS STATEMENTS**

The United States of America by its attorneys, Robert K. Hur, United States Attorney for the District of Maryland, and James T. Wallner and Clinton J. Fuchs, Assistant United States Attorneys for said District responds in opposition to the Defendant's motion to suppress his post-arrest statement.

I.   **FACTUAL AND PROCEDURAL SUMMARY OF THE CASE**

As noted more thoroughly in the Government's Consolidated Response in Opposition to the Defendant's Pre-Trial Motions, the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) arrested the Defendant, Ricky Evans, in Richmond, Virginia after conducting a wiretap investigation into his drug trafficking activities in Maryland, Virginia, and West Virginia. The United States Attorney's Office charged Evans by criminal complaint with conspiracy to distribute heroin. The ATF transported Evans from Richmond to Baltimore for his initial appearance, where he consented to detention. Prior to his transport, the ATF advised Evans of his rights, and then before and during his transport to Baltimore, Evans and the agents discussed Evans's options regarding federal prosecution. Evans admitted ownership of the drugs in the Richmond home, and did not deny his role in BGF, when asked about it. The ATF recorded the vast majority of the

1

conversation via a digital recording device, a copy of which the Government attaches as Exhibit #1.

## II. DEFENSE MOTION

The Government responded to the vast majority of the Defendants' motions in its consolidated response in opposition to the Defendants' motions (ECF #87), but failed to respond to the single motion, filed by Evans immediately following his arrest, to suppress his statement to law enforcement (ECF #16). The Government now responds to that single motion, and incorporates by reference its previous filing (ECF #87).

## III. ARGUMENT

### A. MOTION TO SUPPRESS POST-ARREST STATEMENT TO LAW ENFORCMENT

The Court should deny Evans's motions to suppress his statement made to ATF investigators because Evans's made the statements after voluntarily, knowingly, and intelligently waiving his Fifth and Sixth Amendment rights after the proper issuance of *Miranda* warnings. Statements made in the course of a custodial interview are admissible when the arrestee waives his Fifth and Sixth Amendment rights, provided the waiver is made voluntarily, knowingly, and intelligently. *United States v. Smith*, 608 F.2d 1011, 1012 (4th Cir. 1979) (citing *Miranda v. Arizona*, 384 U.S. 435, 444 (1966)). The Supreme Court has reiterated that while requiring *Miranda* warnings "does not, of course, dispense with the voluntariness inquiry[,] . . . '[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.'" *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)) (internal citation omitted).

As the Fourth Circuit has observed, the "inquiry into whether an individual waived

effectuation of the rights conveyed in the *Miranda* warnings has two distinct dimensions." *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). "First, the relinquishment of the right 'must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* at 139 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, in addition to being voluntary, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 140. The Court determines whether a *Miranda* waiver is voluntary, knowing, and intelligent by examining the totality of the circumstances. "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421.

Here, Special Agent John Meadors, an ATF agent from Baltimore, advised Evans, a sophisticated criminal with multiple contacts with the criminal justice system, of his rights not once, but twice. After each time the agents advised Evans, he conversed with the investigators in a calm manner. Evans questioned the agents about his case, and his choices. Evans and the agents discussed the nature of the charges and how best to proceed with his prosecution.

Eventually, the agents decided to transport Evans to Baltimore for his initial appearance in the United States District Court for the District of Maryland rather than file local charges against Evans or transport him to the Eastern District of Virginia for his initial appearance. Prior to beginning the transport to Baltimore, the ATF again advised Evans of his rights, and then again recorded the conversations as the agents transported him from Richmond to Baltimore. Once inside the Washington beltway, Meadors and the Richmond agents met with two agents from Baltimore, who transported Evans the remainder of the distance to Baltimore. While in the vehicle with the

3

new agents, Evans continued to converse with them about his case, and make further admissions to them.

As noted, Evans has had significant contacts with the law enforcement and the criminal justice system. He is well-aware of the requirements of *Miranda* and his rights. In fact, Evans gave another statement to law enforcement after being advised of his rights after he was arrested in *Safe Streets* in July of 2015. Not only was Evans aware of his rights, he was familiar enough with criminal justice system to question the agents about his options regarding his federal prosecution. Further the encounter was far from coercive, Evans and the agents conversed in normal tones, and no deception or aggressive behavior was used toward him. Evans was even aware, based upon portions of the recordings, that the conversations was being recorded. Similarly, after Meadors transferred Evans to the other ATF agents and the recordings stopped, the agents continued to transport Evans to Baltimore in the same professional manner. Again, the agents merely discussed the case and their investigation with Evans as he continued to make admissions.

In short, Evans, an experienced criminal, made his admissions to law enforcement after being properly advised of his rights twice.

### III. **CONCLUSION**

For all the reasons states above, the Government respectfully requests that Evans's motion to suppress his statement should be denied.

                                          Respectfully submitted,

                                          Robert K. Hur
                                          United States Attorney

By: _____/s/_____
       James T. Wallner
       Clinton J. Fuchs
       Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of October 2018, a copy of the foregoing Government's Response to Defendants' Pre-Trial Motions was electronically filed with notice to all counsel of record:

_____/s/_____
James T. Wallner
Assistant United States Attorney